[Crim. No. 10170. Fourth Dist., Div. Two. Jan. 12, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS FRANCISCO MORINGLANE, Defendant and Appellant.

COUNSEL

Howard J. Berman, under appointment by the Court of Appeal, and Madeline McDowell for Defendant and Appellant.

George Deukmejian, Attorney General, Michael D. Wellington and Bruce Daniel Rosen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUFMAN, Acting P. J.—Viewed most favorably to the People who prevailed below, the evidence establishes that shortly after 5 p.m. on February 4, 1978, defendant Moringlane and a codefendant Hector Beltran,[1] while in an automobile owned by defendant, chased a vehicle containing Javier Francisco Silva and Michael Ruiz Rico at speeds up to 80 miles per hour in the City of Chino; that numerous rifle shots were fired by defendant at the vehicle in which Silva and Rico were riding; and that several shots missed that vehicle and hit Danny Kay

---

[1]Although Beltran was a party to this appeal, the judgment of conviction was affirmed as to him in a separate unpublished opinion filed March 27, 1980, and his petition for hearing in the California Supreme Court was denied June 25, 1980.

McDowell and his child William S. McDowell who were traveling in another vehicle. Danny Kay McDowell was killed and William S. McDowell was seriously wounded.

In a five-count information defendant and Beltran were charged with murdering Danny Kay McDowell (count I), assault with intent to murder William S. McDowell (count II), assault with intent to murder Silva (count III), assault with intent to murder Rico (count IV) and conspiracy to murder Silva and Rico[2] (count V). With respect to all of the charges it was alleged that defendant and Beltran were armed with a deadly weapon, to wit, a rifle and that each used a firearm, to wit, a rifle. In addition, in respect to the assault with intent to commit murder counts[3] (counts II, III and IV) it was alleged that with the intent to inflict such injury defendant and Beltran inflicted great bodily injury upon William S. McDowell.

Following a jury trial defendant and Beltran were found guilty on all five counts. The jury also found that the overt acts were committed as charged and that defendant was armed with and used a rifle during the commission of the offenses charged in counts II, III, IV and V. Further, the jury found true the allegations that in the commission of each of the assaults with intent to commit murder (counts II, III and IV) defendant, with the intent to inflict such injury, inflicted great bodily injury upon William S. McDowell.

The court sentenced defendant to concurrent life terms in state prison on counts I and V (first degree murder and conspiracy to commit murder). With respect to count II the court imposed a sentence of six years, three years for the assault with intent to murder William S. McDowell plus a three-year enhancement for inflicting great bodily injury upon William S. McDowell. With respect to each of counts III and IV, the assaults with intent to murder Silva and Rico respectively, the court

---

[2]Although count V of the information did not specifically name Silva and Rico as the intended victims of the conspiracy to murder, that fact is made perfectly clear from the first two of the three overt acts alleged: that while in defendant's 1969 Chevrolet, defendant and Beltran "did chase an automobile containing Javier Francisco Silva and Michael Ruiz Rico, on Philadelphia and Central Avenue in the City of Chino"; and that "the defendants ... did shoot at the vehicle containing ... Silva and ... Rico at the intersection of Central Avenue and the West Bound On-Ramp to the Pomona Freeway, I-S 60."

[3]Penal Code section 217 which defined the crime of assault with intent to commit murder was repealed effective January 1, 1981 (Stats. 1980, ch. 300, § 2, No. 4 West's Cal. Legis. Service, p. 800.)

sentenced defendant to two years in prison, one year for the substantive crime plus a one-year enhancement for inflicting great bodily injury upon William S. McDowell. The sentences imposed for counts II, III and IV, including the enhancements pertaining thereto, were ordered to be served concurrently with the sentences imposed on counts I and V.

On appeal defendant advances five contentions: (1) that the court's imposing three sentence enhancements (one on each of counts II, III and IV) for the infliction of great bodily injury upon the same person, William S. McDowell, violates Penal Code section 654 proscribing multiple punishment for a single act; (2) that the imposition of concurrent life sentences on both the murder and conspiracy to commit murder violates Penal Code section 654; (3) that inasmuch as there was evidence of intoxication, the court erred in not instructing *sua sponte* on voluntary manslaughter, assault with intent to commit voluntary manslaughter and diminished capacity; (4) that defendant was deprived of effective assistance of counsel by counsel's failure to investigate and assert on defendant's behalf a defense of diminished capacity; and (5) that the court erred in giving a flight instruction. Save for the first, defendant's contentions are without merit.

### Multiple Enhancements for Inflicting Great Bodily Injury on William S. McDowell

■ Penal Code section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one ...." While the imposition of three sentence enhancements for the same act of inflicting great bodily injury upon the same person may not literally be prohibited by the statutory language, the effect of section 654 has not been strictly limited to its language. ■ It is now accepted law in this state that section 654 proscribes multiple punishment for the same act unless the act constituted a crime against several persons. (See, e.g., *People v. Miller* (1977) 18 Cal.3d 873, 885, 887 [135 Cal.Rptr. 654, 558 P.2d 552]; *People v. Beamon* (1973) 8 Cal.3d 625, 636-639 [105 Cal.Rptr. 681, 504 P.2d 905]; *People v. Johnson* (1974) 38 Cal.App.3d 1, 11-12 [112 Cal.Rptr. 834].) And we are persuaded that section 654 as interpreted prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person.

To uphold the imposition of the multiple enhancements the Attorney General quotes a statement from the opinion in *People v. Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629]: "Section 654, which precludes multiple punishment for a single offense or course of conduct, is inapplicable to enhancements, because they individually "" 'do not define a crime or offense but relate to the penalty to be imposed under certain circumstances.' " " While the result reached in *Boerner* was eminently correct, the quoted statement is entirely too broad and was not supported by the authorities cited and quoted out of context. A substantial number of cases hold or otherwise indicate that Penal Code section 654 does in appropriate circumstances bar the imposition of multiple sentence enhancements for the commission of a single act. (See, e.g., *People v. Miller, supra*, 18 Cal.3d at p. 887; *In re Culbreth* (1976) 17 Cal.3d 330, 333-334 [130 Cal.Rptr. 719, 551 P.2d 23]; *People v. Blessing* (1979) 94 Cal.App.3d 835, 840-841 [155 Cal.Rptr. 780]; *People v. Bush* (1975) 50 Cal.App.3d 168, 178 [123 Cal.Rptr. 576], disapproved on other grounds in *People v. Walker* (1976) 18 Cal.3d 232, 240 [133 Cal.Rptr. 520, 555 P.2d 306]; *People v. Lowe* (1975) 45 Cal.App.3d 792, 796 [119 Cal.Rptr. 699]; *People v. Johnson, supra*, 38 Cal.App.3d at pp. 11-12.) There is nothing to the contrary in either *People v. Walker, supra*, 18 Cal.3d 232, or *People v. Strickland* (1974) 11 Cal.3d 946 [114 Cal.Rptr. 632, 523 P.2d 672], partially quoted and cited for the proposition stated in *Boerner*. Neither of those cases had anything whatever to do with Penal Code section 654 or multiple sentence enhancements imposed as a result of a single act of the defendant.

Moreover, the statement in *Boerner* that section 654 is inapplicable to sentence enhancements was wholly unnecessary to the decision. In that case two sentence enhancements had been imposed: one because the defendant had wielded a dangerous or deadly weapon, a knife, in an attempted robbery; the other because the defendant had also inflicted great bodily injury on the victim with the knife. (120 Cal.App.3d at pp. 508, 510.) As the *Boerner* court correctly stated, "section 1170.1, subdivision (d), expressly permits a sentencing court to impose both of the cited enhancements in cases of attempted robbery." (*Id.*, at p. 511, fns. omitted.) And even in the absence of express statutory authority, the imposition of two sentence enhancements in that case would have been wholly consonant with the statutory purpose because the acts sought to be deterred by the two enhancements were entirely distinct: (1) being armed with a deadly or dangerous weapon and (2) inflicting great bodily injury.

The principles set forth and applied in *People* v. *Miller, supra*, 18 Cal.3d at page 887, *In re Culbreth, supra*, 17 Cal.3d at pages 333-334, and the Court of Appeal decisions previously cited are controlling. While all of them dealt with multiple enhancements based on firearm "use" or "armed" allegations, we perceive no meaningful distinction from that fact so far as the application of Penal Code section 654 is concerned. Here the only great bodily injury pleaded and proved was upon William S. McDowell. It resulted from a single act of defendant. Multiple punishment therefor is proscribed by Penal Code section 654. Accordingly, the 2 one-year enhancements imposed in respect to counts III and IV on account of the infliction of great bodily injury on William S. McDowell will be stricken and the abstract of judgment ordered modified accordingly.

### Multiple Punishment for Murder and Conspiracy to Commit Murder

█ It is of course true that Penal Code section 654 prohibits the imposition of sentences, whether concurrent or consecutive, for both a murder and conspiracy to commit the murder. (E.g., *People* v. *Richardson* (1978) 83 Cal.App.3d 853, 868 [148 Cal.Rptr. 120], disapproved on other grounds in *People* v. *Saddler* (1979) 24 Cal.3d 671, 682, fn. 8 [156 Cal.Rptr. 871, 597 P.2d 130].) However, "if 'a conspiracy had an objective apart from an offense for which the defendant is punished, he may properly be sentenced for the conspiracy as well as for that offense. [Citation.]' (*In re Cruz* (1966) 64 Cal.2d 178, 181 [49 Cal.Rptr. 289, 410 P.2d 825]; *In re Romano* (1966) 64 Cal.2d 826, 828-829 [51 Cal.Rptr. 910, 415 P.2d 798]; *People* v. *Cohen* (1970) 12 Cal.App.3d 298, 328 [90 Cal.Rptr. 612].)" (*Richardson, supra*, 83 Cal.App.3d p. 868.)

Here the conspiracy was to murder Silva and Rico, whereas it was Danny Kay McDowell who was murdered. McDowell's death was not the object of the conspiracy.

### Failure to Instruct Sua Sponte on Diminished Capacity, Voluntary Manslaughter and Assault With Intent to Commit Voluntary Manslaughter

█ The entire theory of the defense was that defendant did not commit the acts and was not even present at the scene of the crime. Appellate counsel argues that because there was evidence that defendant had been drinking beer on the day of the shooting, the court should

have, *sua sponte*, instructed the jury on diminished capacity, voluntary manslaughter and assault with intent to commit voluntary manslaughter. The standard asserted is that the court was required to give these instructions *sua sponte* if there was "any evidence deserving of any consideration whatever." (See *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]; italics omitted.)

The standard asserted is incorrect and the contention is devoid of merit. *People* v. *Carmen* was a case in which instructions were requested and denied (36 Cal.2d at p. 773), and the rule stated in *Carmen* is the rule applicable to the court's duty to give requested instructions. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Cram* (1970) 12 Cal.App.3d 37, 41-42 [90 Cal.Rptr. 393].) ■ The standard to be used in reviewing a trial court's failure to instruct *sua sponte* was articulated in *People* v. *Sedeno, supra,* 10 Cal.3d at page 716: "[T]he duty to give instructions, *sua sponte,* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case. ... [T]his limitation on the duty of the trial court is necessary not only because it would be unduly burdensome to require more of trial judges, but also because of the potential prejudice to defendants if instructions were given on defenses inconsistent with the theory relied upon." (Accord: *People* v. *Barraza* (1979) 23 Cal.3d 675, 691 [153 Cal.Rptr. 459, 591 P.2d 947].)

■ Here there was no substantial evidence of intoxication. The most that can be said is that there was evidence that defendant consumed seven or eight beers over a five-hour period. We do not agree with appellate counsel's characterization of this evidence as being evidence of heavy drinking. Moreover, there was no evidence whatever that drinking the beer had any effect whatever upon defendant. Finally, the instructions appellate counsel now contends should have been given *sua sponte* would have been inconsistent with defendant's theory of defense, namely, that he was not present at the scene of the crime and did not perform the criminal acts.

The court was not required to instruct *sua sponte* as now claimed; indeed, in all likelihood it would have been error had it done so.

## Ineffective Assistance of Counsel

■ Closely related to the *sua sponte* instruction contention and equally without merit is the contention that defendant was deprived of competent representation because counsel failed to develop and advance a diminished capacity defense based on the "evidence of intoxication" claimed to exist and in failing to request jury instructions on diminished capacity, voluntary manslaughter and assault with intent to commit voluntary manslaughter.

The evidence that defendant consumed seven or eight beers over a period of five hours earlier in the day would have provided no viable diminished capacity defense. On the other hand, inasmuch as no eyewitnesses to the crime could identify defendant as one of the perpetrators, the defense pursued by trial counsel, that defendant was not present at the scene of the crime and did not perpetrate the acts, was real and substantial. Any attempt to present a concurrent defense of diminished capacity based on the meager evidence available would have weakened the real and substantial defense presented without any reasonable expectation of benefit.

## The Flight Instruction

■ The court instructed: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is *not* sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (CALJIC No. 2.52 (4th ed. 1979).)

In respect to the flight of the perpetrators immediately after the shots were fired, defendant correctly states that it is inappropriate to give a flight instruction when the identity of the perpetrator or perpetrators who fled is in question. (*People v. Salazar* (1980) 108 Cal.App.3d 992, 997-998 [167 Cal.Rptr. 38]; *People v. Anjell* (1979) 100 Cal.App.3d 189, 199-202 [160 Cal.Rptr. 669].) However, here there was evidence of another episode of flight as to which defendant's identity was not in question. The shooting occurred about 6:45 p.m. Defendant and Beltran were spotted shortly after 7 p.m. while walking at a normal pace. When the spotlights on the police vehicle were illuminated, the pair quickened their pace. When Officer Vasquez yelled, "Stop," defendant began run-

ning. The jury could well have inferred that defendant was attempting to flee to avoid arrest. Thus, a flight instruction was not entirely unwarranted.

We do observe that to be limited to the second episode, the instruction given should have been edited to delete the words "immediately after the commission of a crime." A consideration of the entire record, however, is persuasive that the failure to delete the quoted words was not error of such proportions as to require reversal. It is not reasonably probable that the outcome would have been more favorable to defendant had the quoted words been omitted from the instruction. The automobile identified as the one in which the perpetrators were riding at the time of the shooting belonged to defendant. The rifle which fired the bullet that killed Danny Kay McDowell bore defendant's fingerprints. Moreover, the language of the instruction informed the jury that flight could only be considered as a circumstance tending to prove defendant's guilt if in fact flight were proved. To the extent there was any error, we conclude it was not prejudicial. (Cf. *People* v. *Anjell, supra,* 100 Cal.App.3d at p. 201.)

### Disposition

The 2 one-year sentence enhancements for infliction of great bodily injury in respect to counts III and IV are stricken and the abstract of judgment is ordered corrected to delete those 2 one-year sentence enhancements. In all other respects the judgment and sentence are affirmed.

McDaniel, J., and Gardner, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.