[No. B057117. Second Dist., Div. Five. Aug. 31, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT ALVAREZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, and III.

## COUNSEL

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Roy C. Preminger and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GRIGNON, J.**—Defendant and appellant Albert Alvarez appeals from a judgment after a jury trial in which he was convicted of two counts of attempted murder with the infliction of great bodily injury resulting from the discharge of a firearm from a motor vehicle and one count of shooting at an inhabited dwelling. He also admitted to having a serious prior felony conviction. On appeal he contends that the evidence was insufficient to support the verdict, the trial court committed instructional error and he was denied his right to counsel and his right to be present at all stages of the proceedings. He also contends the trial court erred in sentencing him on two enhancements pursuant to Penal Code section 12022.55, great bodily injury resulting from the discharge of a firearm from a vehicle. We find no prejudicial error and affirm.

## PROCEDURAL BACKGROUND

Defendant was charged by amended information with the attempted murder of Sonia Padilla in violation of Penal Code sections 664 and 187, subdivision (a) (count 1); the attempted murder of Arturo Gamboa in violation of Penal Code sections 664 and 187, subdivision (a) (count 2); assault with a firearm on Padilla in violation of Penal Code section 245, subdivision (a)(2) (count 3); assault with a firearm on Gamboa in violation of Penal Code section 245, subdivision (a)(2) (count 4); and shooting at an inhabited dwelling in violation of Penal Code section 246 (count 5). It was further alleged as to counts 1, 2, 3 and 4 that defendant intentionally inflicted great bodily injury as a result of discharging a firearm from a motor vehicle within the meaning of Penal Code section 12022.55, and a principal was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a)(1). As to counts 3 and 4, it was further alleged that defendant personally used a firearm within the meaning of Penal Code section 12022.5, subdivisions (a) and (d). It was further alleged that defendant had suffered a prior serious felony conviction within the meaning of Penal Code section 667, subdivision (a).

The jury found defendant guilty of counts 1, 2 and 5 and, as to counts 1 and 2, found the great bodily injury and principal armed with a firearm allegations to be true. Defendant admitted the prior serious felony conviction. Defendant was sentenced to the upper term of nine years plus five years for the great bodily injury enhancement on count 1, a consecutive sentence of two years, four months plus one year, eight months for the great bodily injury enhancement (one-third of the middle term) on count 2, and five years for the prior serious felony conviction. The sentence on count 5 was stayed pursuant to Penal Code section 654. Defendant's sentence totaled 23 years in state prison.

## FACTS

On Saturday, June 9, 1990, at approximately 11:45 p.m., two 16-year-old boys, Carlos Godoy and Arturo Gamboa, were walking on the sidewalk near the corner of Chalet and Hannon in Bell Gardens, when they noticed a recent model red Chevrolet pickup truck drive slowly by them. Godoy had been drinking that evening. The pickup had three occupants, the driver, defendant and another person in the bed of the pickup. Defendant fired three shots at Godoy and Gamboa. A shot hit Gamboa in his arm. A shot ricocheted off a parked car. A shot went through the kitchen window of 6835 Hannon where Sonia Padilla was visiting, striking Padilla in the left temple.

Gamboa was taken by ambulance to a hospital where he remained for one day. The bullet had hit a nerve in his arm, and he had lost some of his range

of motion and half of his strength. At the time of trial in November of 1990, Gamboa still wore a cast on his arm and bore a scar. Gamboa identified defendant as the shooter from a photographic display on June 11, 1990, at a physical lineup on July 3, 1990, at the preliminary hearing on July 9, 1990, and at trial on November 14, 1990.

Godoy provided a description of the truck and its occupants to the police. The truck was stopped at approximately midnight, two miles from the scene of the shooting. Godoy was taken by police officers to the truck's location later that same night. He identified the truck and defendant as the shooter. He also identified defendant as the shooter from a photographic display conducted later that night, at a physical lineup on July 3, 1990, at the preliminary hearing on July 9, 1990, and again at trial on November 13, 1990.

The bullet which struck Sonia Padilla in the left temple "went in and came out."[1] Her head was bloody. Padilla was treated by paramedics at the scene. The paramedics started an intravenous line and took her by ambulance to the hospital, where she remained for four or five hours. After being released by the hospital, she returned home and took a bath to remove the blood, before she went to a private hospital. She was bandaged at the private hospital, given an injection, and received something for infection and pain. She was released the same day. She returned to the private hospital for treatment once a week for three weeks.

## DISCUSSION

In the published portion of this opinion, we conclude the trial court did not err in sentencing defendant on two enhancements pursuant to Penal Code section 12022.55, great bodily injury resulting from the discharge of a firearm from a vehicle. In the unpublished portion of this opinion, we conclude substantial evidence supported the verdict, there was no instructional error, defendant was not denied his right to counsel, and defendant was not denied his right to be present at all stages of the proceedings.

### I.-III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. SENTENCING

■■■ Citing *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], defendant contends that the trial court erred in sentencing

---

[1]The wound was also described as a grazing wound.

*See footnote, *ante*, page 121.

him on two enhancements pursuant to Penal Code section 12022.55 (great bodily injury resulting from the discharge of a firearm from a vehicle),[4] when the two shootings occurred in a single, indivisible transaction.[5] This appears to be an issue of first impression.

██ Penal Code section 654 prohibits multiple punishment when a single act or transaction is charged as multiple offenses. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839].) Penal Code section 654 is inapplicable when the offenses arising out of a single act or transaction are crimes of violence committed against different victims. (*People* v. *Anderson* (1990) 221 Cal.App.3d 331, 338 [270 Cal.Rptr. 516].) However, where a firearm is used in the course of multiple violent offenses against multiple victims, which are incident to one objective and effectively comprise an indivisible transaction, only a single firearm use enhancement may be imposed regardless of the number of victims. (*In re Culbreth, supra,* 17 Cal.3d 330.) Thus, *Culbreth*'s "single occasion rule" prohibits multiple sentences for firearm use in situations where multiple sentences for the underlying crimes are appropriate. (*People* v. *Levitt* (1984) 156 Cal.App.3d 500, 512 [156 Cal.Rptr. 276].)

In *Culbreth*, the defendant shot and killed three individuals at the same time. He was convicted of two counts of second degree murder and one count of voluntary manslaughter. It was further found as to each of the counts that he had personally used a firearm in the commission of the offense within the meaning of Penal Code section 12022.5.[6] The Supreme Court held: "[A]n analysis of the events is essential to ascertain the apparent intent and objective of the defendant. Such an analysis here clearly indicates the homicides—the two second degree murders and the manslaughter— occurred in a matter of seconds, all part of a single melee. There was but one occasion, one intent, one objective, one indivisible transaction. Therefore

---

[4]Penal Code section 12022.55 provides: "Notwithstanding Section 12022.5, any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury, as defined in Section 12022.7, or causes the death of a person, other than an occupant of a motor vehicle, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall, upon conviction of the felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for five years."

[5]Defendant did not raise a Penal Code section 654 objection to the sentence imposed in the trial court. However, the Supreme Court has held questions involving the applicability of Penal Code section 654 cannot be waived. (*People* v. *Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Thompson* (1989) 209 Cal.App.3d 1075, 1078, fn. 1 [257 Cal.Rptr. 658].)

[6]Penal Code section 12022.5 was redesignated as section 12022.5, subdivision (a) in 1987. (Stats. 1987, ch. 1159, § 1, p. 4088, eff. Sept. 26, 1987.)

section 12022.5 may be applied only once." (*In re Culbreth, supra,* 17 Cal.3d at p. 335; accord, *People* v. *Cardenas* (1982) 31 Cal.3d 897, 914 [184 Cal.Rptr. 165, 647 P.2d 569]; *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 447-448 [172 Cal.Rptr. 652]; *People* v. *McElroy* (1989) 208 Cal.App.3d 1415, 1428-1430 [256 Cal.Rptr. 853].)

*Culbreth* was specifically tailored to the language and legislative history of Penal Code section 12022.5, personal use of a firearm. The Supreme Court held that the legislative purpose of the statute was to deter the use of firearms on subsequent occasions. Although *Culbreth* interpreted Penal Code section 12022.5 under indeterminate sentencing, its holding was reaffirmed under the Determinate Sentencing Law in *People* v. *Cardenas, supra,* 31 Cal.3d at pages 912-914.

Subsequent decisions have applied the *Culbreth* rule to armed allegations (*People* v. *Jordan* (1984) 155 Cal.App.3d 769, 785, fn. 5 [203 Cal.Rptr. 172]; *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 194 [251 Cal.Rptr. 40]) and use of a dangerous or deadly weapon allegations (*People* v. *Amerson* (1984) 151 Cal.App.3d 165, 171 [198 Cal.Rptr. 678]). Subsequent decisions have also held that generally only one enhancement for great bodily injury may be imposed where multiple offenses are committed against a single victim on a single occasion. (*People* v. *Culton* (1979) 92 Cal.App.3d 113, 117 [154 Cal.Rptr. 672] ["The Attorney General has properly conceded that only one enhancement for great bodily injury is possible. (See *In re Culbreth* (1976) 17 Cal.3d 330 . . . .)"]; *People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 817 [179 Cal.Rptr. 726] ["And we are persuaded that section 654 as interpreted prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person."]; compare with *People* v. *McElrath* (1985) 175 Cal.App.3d 178, 188-190 [220 Cal.Rptr. 698] [the *Culbreth* rule is not applicable to the great bodily injury inflicted in the course of certain sex offenses enhancement within the meaning of Pen. Code § 12022.8].)

■ Defendant has cited us to, and we have discovered, no case which holds that either Penal Code section 654 or the *Culbreth* "single occasion rule" precludes multiple sentence enhancements for inflictions of great bodily injury on multiple victims, where the underlying offenses are incident to one objective and comprise an individual transaction. We are persuaded that multiple sentence enhancements under these circumstances are not prohibited.

The primary purpose of the proscription against double punishment "is to insure that the defendant's punishment will be commensurate with his

criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Neal* v. *State of California, supra,* 55 Cal.2d at p. 20.) Thus, a defendant who commits an act of violence against more than one person is legitimately punished for each victim of his violence.

*Culbreth* does not affect this conclusion. The *Culbreth* rule focuses on the defendant's use of a firearm and concludes that a single occasion of such use may be punished only once and not with respect to each victim. The rule emphasizes the single act of the defendant in using a firearm and reasons that the firearm use enhancement relates to the act of the defendant and not to the result to the victim. A great bodily injury enhancement, on the other hand, is related specifically to the result to the victim. The enhancement requires that the defendant intend to and actually inflict great bodily injury on a victim. To the extent the defendant intends to, and actually does, inflict great bodily injury on multiple victims, the defendant is more culpable than a defendant who harms only a single victim and, thus, may legitimately be punished for each victim so harmed.

We conclude that neither Penal Code section 654 nor the *Culbreth* "single occasion rule" prohibits the imposition of multiple sentence enhancements for infliction of great bodily injury on multiple victims on a single occasion with a single objective. ■ We note that Penal Code section 12022.55 is applicable to the intentional infliction of great bodily injury "as a result of discharging a firearm from a motor vehicle." It might be argued that Penal Code section 12022.55 is a firearm use enhancement rather than a great bodily injury enhancement and, thus, subject to the *Culbreth* "single occasion rule." We reject this argument. The Penal Code section 12022.5 enhancement is applicable to the use of a firearm whether or not any injury is inflicted on the victim. The Penal Code section 12022.55 enhancement, on the other hand, is expressly applicable to the actual infliction of great bodily injury and thus, specifically relates to the result to the victim. The fact that the great bodily injury must be inflicted in the course of a drive-by shooting does not decrease the defendant's culpability for intentional infliction of great bodily injury on multiple victims.

Here, the trial court properly imposed separate sentences for both great bodily injury enhancements under Penal Code section 12022.55.

DISPOSITION

The judgment is affirmed.

Turner, P. J., and Boren, J., concurred.

A petition for a rehearing was denied September 29, 1992, and appellant's petition for review by the Supreme Court was denied November 24, 1992.