[No. C067180. Third Dist. Mar. 6, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE ROLANDO WOOTEN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

122

Counsel

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Julie A. Hokans, Daniel B. Bernstein and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**HOCH, J.**—In *People v. Ahmed* (2011) 53 Cal.4th 156 [133 Cal.Rptr.3d 856, 264 P.3d 822] (*Ahmed*), the California Supreme Court explained how to determine whether any of multiple sentence enhancements for a single crime must be stayed. *Ahmed* thus addressed the question of whether Penal Code section 654[1] prohibits imposition of more than one enhancement for the same underlying criminal act. (*Ahmed*, at p. 162.) In this case, we address a question left unanswered by the Supreme Court in *Ahmed*—whether section 654 applies to bar imposition of the same type of sentence enhancement offenses arising out of separate criminal acts.

Defendant Theodore Rolando Wooten seeks to avail himself of section 654 by arguing that the sentence enhancements for great bodily injury (§§ 12022.7, subd. (a), 12022.8) imposed for his attempted murder (§§ 664, 187) and his forcible oral copulation (§ 288a, subd. (c)(2)) of the same victim must be stayed under section 654 and our Supreme Court's guidance in *Ahmed, supra,* 53 Cal.4th 156. Defendant also requests that the abstract of judgment be amended to more accurately reflect the two consecutive sentences for the two counts of kidnapping for rape.

After we issued our prior published decision in this case, the California Supreme Court granted review and transferred the case back to us with directions to make any changes in our prior opinion that we consider appropriate in light of the points made in defendant's petition for review. Pursuant to the direction of the Supreme Court, we have reexamined our previous opinion. We continue to conclude that neither section 654 nor *Ahmed, supra,* 53 Cal.4th 156 applies to stay sentence enhancements attached to offenses arising out of separate criminal acts. We reject defendant's contention he engaged in a single attack on the victim, M.S. Accordingly, defendant does not benefit from authority holding an indivisible course of conduct against one victim cannot serve as the basis for multiple great bodily injury enhancements. (See

---

[1] Undesignated statutory references are to the Penal Code.

*People v. Reeves* (2001) 91 Cal.App.4th 14 [109 Cal.Rptr.2d 728] (*Reeves*); *People v. Moringlane* (1982) 127 Cal.App.3d 811 [179 Cal.Rptr. 726] (*Moringlane*); *People v. Culton* (1979) 92 Cal.App.3d 113 [154 Cal.Rptr. 672] (*Culton*).) We find no error in the trial court's imposition of separate sentence enhancements for great bodily injury inflicted in the commission of forcible oral copulation and attempted murder. We also conclude the abstract of judgment should be amended to reflect more clearly the sentences imposed by the trial court. In all other respects, the judgment is affirmed.

## BACKGROUND

### *Trial*

Evidence introduced at trial showed that defendant viciously attacked victims M.S. and H.D. on separate occasions.

### *Attack on M.S.*

In the early morning of May 1, 2010, defendant knocked on the doors of several rooms at the Town House Motel in West Sacramento. M.S. saw defendant walking past her window around 6:30 a.m. Defendant stopped, pounded on her window, and said something.

M.S. opened the door to tell defendant to leave, but defendant forced his way inside. Defendant locked the door, began choking M.S., and told her to undress. M.S. disrobed and defendant forced her into the bathroom, dragging and hitting her on the way. Once inside the bathroom, defendant bent M.S. over and tried to have sex with her. He got angry after failing to penetrate her. Defendant then hit M.S. a couple of times and ordered her to perform oral sex on him, which she did. M.S. "was getting frustrated" and fled from the bathroom.

Defendant caught M.S. and tried to wrestle her back into the bathroom, but she fled again. Defendant caught her in the bedroom and punched her repeatedly. M.S. tried to stab defendant in the back with a pen and a spoon while defendant chewed on M.S.'s ears and right nipple. At one point, M.S. bit down on defendant's finger so hard that two of her bottom front teeth fell out. Defendant positioned himself over M.S. and kicked M.S. in the head at least eight times, causing her head to rip or tear open. M.S., who was bleeding profusely, screamed for help.

Other residents heard screaming and someone called for help. M.S.'s next-door neighbor, Bertrand Souvera, went to M.S.'s window, where he saw a Black man pinning a White woman on the floor and raising his free hand.

Souvera kicked in the front door and told the man to get off the woman. The man then ran out of the room.

M.S. called 911 and told the operator she had been attacked, was bleeding very badly, and needed an ambulance. An ambulance arrived at 6:45 a.m. The emergency medical technician saw M.S. sitting on her bed naked, and "a lot of blood everywhere." M.S. told emergency personnel that a man beat her after unsuccessfully trying to have sex with her. She later identified defendant as her assailant in a photographic lineup.

M.S. sustained a full thickness scalp laceration extending from her eyebrows to the back of her head. The bleeding from the scalp wound threatened her life. The laceration involved every layer of skin, so that the scalp was separated from the skull and could be lifted off. The laceration also injured the muscles of her eyes and eyebrows, potentially affecting her ability to make facial expressions.

M.S. also sustained multiple lacerations to her ears and face, as well as two broken teeth. Swelling and redness on her neck was consistent with choking, a laceration on her right nipple was consistent with having been bitten, and bruises on her left breast were consistent with blunt force trauma. Her wounds were so extensive they could not be sutured under local anesthetic. M.S. still suffered scarring and nerve damage at the time of the trial.

The crime scene investigator found "a tremendous amount of blood" in the room, concentrated in the southeast corner. DNA testing on blood from a pen in the room found a mixture of M.S.'s and defendant's DNA. M.S.'s blood was on defendant's shoe when he was arrested.

### Attack on H.D.

On May 27, 2010, 21-year-old H.D. went to a birthday party in West Sacramento. There was much drinking at the party. She had planned for her boyfriend to pick her up at a nearby Valero service station on Sacramento Avenue.

H.D. left the party at 2:30 a.m. and began walking to the Valero station. On her way to the station, she met defendant, who came from an apartment complex and began talking to her. He seemed friendly, and told H.D. he needed to go to the Valero station to get a lighter.

Defendant told H.D. he wanted to walk with her. H.D. became uncomfortable when defendant offered to show her a short cut and kept trying to guide her towards dark roads. As H.D. approached the Valero station, her boyfriend

called and told her that he was at a different Valero station. When defendant entered the station, H.D. ran off towards the other Valero station.

Defendant chased H.D. and grabbed her by the hair, eventually forcing her behind a restaurant on Sacramento Avenue. H.D. screamed and yelled; defendant got to a corner behind the building and threw her to the ground. He pinned H.D. with his forearm on her neck and removed her underwear with the other hand.

Carrie Repass, a resident of a nearby apartment, heard an argument in the restaurant's parking lot. A man was telling a woman to go in one direction, while a woman insisted she did not want to go that way. Repass left the window for awhile; when she returned, she saw a man grabbing a woman who had her face shoved against a chain-link fence. Repass then called the police. She heard the woman keep saying, "No," and saw the man pull clothing off the woman as she tried to kick him off her.

Shortly after 3:00 a.m., Sacramento police found defendant lying on top of H.D. while holding her in a headlock. H.D.'s underwear was on the ground and she was crying.

Defendant told police he did not rape H.D., and said she sat on his lap just before the officers arrived.

### Defense Evidence

Defendant testified that he did not force M.S. to have sex with him, and did not try to force H.D. to have sex with him. According to defendant, M.S. asked to buy $40 of methamphetamine from him. She invited defendant into her room and they discussed getting drugs. M.S. initiated oral sex with defendant, but she got mad over the drugs and started to fight. Defendant struck back at her in self-defense.

Defendant maintained that H.D. flirted with him and called him cute when they met outside his apartment complex. H.D. kissed defendant and asked him to walk her to the Valero station. She followed defendant behind the restaurant, sat on his lap, and kissed him. According to defendant, when H.D. said, "No. Stop," she was refusing to go to the Valero station.

### Judgment and Sentencing

Trial culminated in the jury convicting defendant of the following offenses:

Count 1—attempted rape (§§ 664, 261, subd. (a)(2));

Counts 2 and 4—two counts of kidnapping to commit rape (§ 209, subd. (b)(1));

Count 3—forcible oral copulation with kidnapping, force or fear, burglary, and great bodily injury enhancements (§§ 288a, subd. (c)(2), 12022.8, 667.61, subds. (a), (d)(2), (4), (e)(1)–(3));

Count 5—attempted rape with a great bodily injury enhancement (§§ 664, 261 subd. (a)(2), 12022.8);

Count 6—first degree burglary of an inhabited dwelling with a great bodily injury enhancement (§§ 459, 667.5, subd. (c)(21), 12022.7, subd. (a));

Count 7—mayhem (§ 203); and

Count 8—attempted murder with a great bodily injury enhancement (§§ 664, 187, 12022.7, subd. (a)).

The trial court sentenced defendant to an indeterminate term of 39 years to life in prison in addition to a determinate term of 17 years eight months. As pertinent to this appeal, the trial court imposed a great bodily injury enhancement pursuant to section 12022.8 on the forcible oral copulation offense in count 3, and a great bodily injury enhancement pursuant to section 12022.7, subdivision (a), on the attempted murder offense in count 8. Both enhancements attached to defendant's crimes against M.S.

## DISCUSSION

### I

### *Sentence Enhancements for Great Bodily Injury on M.S.*

Defendant contends the great bodily injury enhancements imposed on counts 3 and 8 arise out of a single indivisible course of conduct, i.e., a continuous assault against M.S. Thus, he urges us to apply section 654 to stay the enhancement imposed under section 12022.7 for count 8. We conclude neither section 654 nor *Ahmed, supra,* 53 Cal.4th 156 applies to stay the challenged great bodily injury enhancement.

### A.

### *Section 654 and Sentence Enhancements*

Section 654 precludes multiple punishments for a single criminal act by providing that "[a]n act or omission that is punishable in different ways by

different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

■ Although it has long been settled that section 654 bars multiple punishments for the same substantive offense (see *People v. Correa* (2012) 54 Cal.4th 331, 341 [142 Cal.Rptr.3d 546, 278 P.3d 809]), the California Supreme Court only recently resolved the question of whether section 654 also applies to sentence enhancements. (*Ahmed, supra,* 53 Cal.4th at p. 162.) The *Ahmed* court concluded that section 654 may apply to sentence enhancements arising from the circumstances of the crime and not imposed based on the status of the offender. (*Ahmed,* at p. 161.) As our Supreme Court noted, sometimes separate enhancements apply to different aspects of the *same* substantive offense. (*Id.* at p. 163.) Nonetheless, the high court noted that considerations of whether section 654 requires an enhancement to be stayed will generally be unnecessary because the sentence enhancement statutes themselves will more often indicate whether multiple punishments may be imposed. Thus, "[o]nly if the specific statutes do not provide the answer should the court turn to section 654." (*Ahmed,* at pp. 159–160.)

*Ahmed* involved a defendant who shot his girlfriend in the stomach with a pistol and was convicted of assault with a firearm (§ 245, subd. (a)(2)) with enhancements for personal use of a firearm (§ 12022.5, subd. (a)) and personal infliction of great bodily injury (§ 12022.7, subd. (e)). (*Ahmed, supra,* 53 Cal.4th at pp. 160–161.) The trial court sentenced the defendant to consecutive terms on both enhancements, but the Court of Appeal reversed on grounds that section 654 barred imposing both enhancements. (*Ahmed,* at p. 161.) Thus, the threshold question before the Supreme Court was "how, if at all, section 654 applies to whether a court may impose multiple enhancements *for a single crime.*" (*Ahmed, supra,* 53 Cal.4th at pp. 160–161, italics added.)

■ The *Ahmed* court held that, in instances of multiple enhancements arising out of the same substantive offense, courts should first determine whether the applicable enhancement statutes address the permissibility of multiple punishments. (*Ahmed, supra,* 53 Cal.4th at p. 163.) Since "[e]nhancements are 'provisions of law' under which an 'act or omission' is 'punishable,' " the Supreme Court held that section 654 applies "to enhancements when the specific statutes do not provide the answer." (*Ahmed, supra,* 53 Cal.4th at p. 163.)

In articulating this approach, the *Ahmed* court recognized that enhancements differ from substantive crimes. Specifically, "[p]rovisions describing

substantive crimes . . . generally define criminal *acts*. But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*Ahmed, supra*, 53 Cal.4th at p. 163.) When applied to a single substantive offense, section 654 "bars multiple punishment for the same *aspect* of a criminal act." (*Ahmed*, at p. 164.) In so holding, *Ahmed* did not address the imposition of multiple sentence enhancements for separate substantive offenses.

■ In *People v. Akins* (1997) 56 Cal.App.4th 331 [65 Cal.Rptr.2d 338], the court observed that "nearly all of the cases that have applied section 654 to limit enhancements have done so in the context *of a single act committed against a single victim*." (*Id.* at p. 338, italics added.) Thus, "[t]he 'cases which do apply . . . section 654 to enhancements have limited the number of enhancements applied to a single conviction, when there was a single act committed against a single victim.' [Citations.]" (*People v. Arndt* (1999) 76 Cal.App.4th 387, 396 [90 Cal.Rptr.2d 415].) This rule reflects the language of section 654, which speaks in terms of "[a]n act or omission . . . ." In short, section 654 applies to situations in which several offenses are committed during a course of conduct deemed to be indivisible. (*People v. Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].)

When the criminal acts forming the basis for convictions of multiple substantive offenses are divisible—i.e., reflecting separate intents, objectives, or events—then section 654 has been held inapplicable. (*People v. Britt* (2004) 32 Cal.4th 944, 951–952 [12 Cal.Rptr.3d 66, 87 P.3d 812] (*Britt*).) Thus, it follows that if section 654 does not bar punishment for two crimes, then it cannot bar punishment for the same enhancements attached to those separate substantive offenses. This is true even if the same *type* of sentence enhancement is applied to the underlying offenses.

■ A sentence enhancement relates to an aspect of the substantive offense to which it attaches, not to other similar enhancements for separate criminal acts. (See *Ahmed, supra*, 53 Cal.4th at p. 163.) Just as the use of a single gun against multiple victims permits separate sentences for an assault against each individual, so too separate enhancements—even under the same statute—may be imposed for each conviction arising out of a separate criminal act. (*Britt, supra*, 32 Cal.4th at p. 952 ["[s]ection 654 turns on the *defendant's* objective in violating both provisions, not the Legislature's purpose in enacting them"]; see, e.g., *People v. Hendrix* (1997) 16 Cal.4th 508, 511 [66 Cal.Rptr.2d 431, 941 P.2d 64].) Conversely, a string of offenses against a single victim may yield multiple convictions of substantive offenses when each is committed for a different purpose. (See, e.g., *People v. Castro* (1994) 27 Cal.App.4th 578, 584–585 [32 Cal.Rptr.2d 529] [holding "section

654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part of the same criminal venture [against a single victim], are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense"].) Thus, the same type of enhancement may be imposed for each substantive offense committed with differing intent or for a different purpose. So long as the conduct giving rise to the convictions of separate substantive offenses is divisible or arises from separate criminal acts, neither section 654 nor *Ahmed, supra,* 53 Cal.4th 156 requires the staying of the attached enhancements.

Defendant argues that section 654 can bar multiple enhancements even when attached to substantive offenses that may be punished separately. In so arguing, he relies on *Reeves, supra,* 91 Cal.App.4th 14, *Moringlane, supra,* 127 Cal.App.3d 811; *Culton, supra,* 92 Cal.App.3d 113, and *People v. Alvarez* (1992) 9 Cal.App.4th 121 [11 Cal.Rptr.2d 463] (*Alvarez*).

*Reeves* involved a defendant who was convicted of burglary and "assault with great bodily injury force" where a great bodily injury enhancement (§ 12022.7) was imposed for each of the two crimes. (*Reeves, supra,* 91 Cal.App.4th at pp. 54–55.) In *Reeves,* the Court of Appeal held the trial court erred by imposing two enhancements for great bodily injury—one for burglary and the other for assault—because both convictions of the substantive offenses arose out of a single assault against a single victim, Debra E. (*Id.* at p. 56.) The *Reeves* court concluded that "[i]n the absence of any evidence making the assault of Debra E. divisible (see, e.g., *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1210 [227 Cal.Rptr. 849] [permitting two enhancements where defendant committed two separate assaults on a single victim]), the trial court should not have imposed two great bodily injury enhancements under section 12022.7." (*Id.* at p. 57.) Thus, *Reeves* holds that multiple enhancements for great bodily injury may not be premised on an indivisible assault of one victim. In reaching this conclusion, the *Reeves* court relied on two cases cited by defendant: *Moringlane* and *Culton.* (*Reeves, supra,* at pp. 56–57.)

*Moringlane* held section 654 "prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person." (*Moringlane, supra,* 127 Cal.App.3d at p. 817.) Thus, the *Moringlane* court struck enhancements for great bodily injury that redundantly punished a single injury that "resulted from a single act of defendant." (*Id.* at p. 819.) *Culton* involved two enhancements for great bodily injury that arose out of an indivisible assault of a single victim. (*Culton, supra,* 92 Cal.App.3d at pp. 115, 117.) Based on the indivisible assault on the victim, the *Culton* court found

the People "properly conceded that only one enhancement for great bodily injury is possible." (*Id.* at p. 117.)

Alvarez acknowledges the rule "that generally only one enhancement for great bodily injury may be imposed where multiple offenses are committed against a single victim on a single occasion." (*Alvarez, supra,* 9 Cal.App.4th at p. 127.) Nonetheless, the Court of Appeal affirmed the imposition of two enhancements for great bodily injury resulting from firing a gun from a motor vehicle. (*Id.* at pp. 123–125.) The decision notes that nothing "precludes multiple sentence enhancements for inflictions of great bodily injury on multiple victims." (*Id.* at p. 127.) Because the defendant in *Alvarez* fired three shots that hit two people, causing great bodily injury to each victim, the trial court did not err in imposing separate enhancements. (*Id.* at p. 128.)

■ *Reeves, Moringlane, Culton,* and *Alvarez* stand for the proposition that only one enhancement for great bodily injury may be imposed on a defendant if he or she committed a single assault against a single victim. Here, defendant challenges the imposition of two enhancements for great bodily injury arising out of his crimes against M.S. Consequently, the propriety of the separate enhancements imposed on defendant depends on whether the attacks against M.S. constitute a single, indivisible assault or separate criminal acts.

## B.

### *Separate Attacks on M.S.*

■ Defendant characterizes his offenses as arising out of a single attack on M.S. that spanned his entrance into her motel room to the time he left her lying on the floor with life-threatening injuries. To this end, defendant contends the trial court found the great bodily injury enhancements arose out of "the very same criminal behavior." We reject the argument because multiple enhancements were not imposed for a single, indivisible assault on M.S. Defendant's violent attempt to sexually assault her and his subsequent attack that was intended to kill M.S. cannot be conflated.

We begin with defendant's repeated assertion that the trial court "observed that count five's great bodily injury enhancement involved 'the very same criminal behavior' as the great bodily injury enhancement in connection with the forcible oral copulation, count three." Defendant's assertion refers to the following statement by the trial court during sentencing: "Count 5a is a 12022.8(a) [*sic*] enhancement, but I've already imposed that enhancement on count—as to Count 3a and we're talking about the very same criminal behavior in Count 5a, so I would impose that five-year term, but I would stay

that term pursuant to . . . section 654." Count 5a, however, does not refer to defendant's attempted murder conviction (which was for count 8). Instead, count 5a referred to the great bodily injury enhancement that attached to the conviction for attempted rape. The trial court's finding that defendant's infliction of great bodily injury during the sexual assault of M.S.—in which defendant attempted to penetrate her with his penis and forced her to orally copulate him—does not settle the issue of whether the sexual assaults were indivisible from the subsequent violence that marked his intent to kill her. The testimony of M.S. establishes that defendant's assaults before and after he forced M.S. to orally copulate him were separate acts of violence.

Defendant burst into M.S.'s room prepared to use force to perpetrate sex crimes against her. As soon as he was inside her motel room, he began choking her and telling her to remove her clothes. The victim complied with his instructions to go into the bathroom where he told her to bend over because "he wanted to have sex with her . . . ." To facilitate his sexual assault, defendant punched M.S. and nearly "chok[ed] [her] to death." Medical personnel later found she had neck injuries consistent with strangulation.

Defendant failed to make vaginal or anal penetration. He became angry and forced M.S. to orally copulate him. M.S. complied but "was getting frustrated." When she pushed defendant away and tried to run for the door, a new attack ensued. As the victim testified, defendant's initial violence in the bathroom had been "sexual, more sexual."

The second assault began as M.S. exited the bathroom, when defendant focused on beating her. Defendant's second assault was intended to punish her by inflicting life-threatening injuries. During this assault, defendant kicked M.S.'s head open so that her scalp separated from her skull.

Defendant launched different attacks on M.S. before and after she orally copulated him. Defendant's purposes shifted from facilitating sexual gratification to sadistic infliction of pain after he was unable to make vaginal penetration and M.S. refused to further orally copulate him. Because section 654 does not bar punishment for both substantive crimes and the enhancements are premised on separate attacks, defendant is not entitled to a stay of the great bodily injury enhancement imposed for the attempted murder.

## II

### *Abstract of Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 121.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment showing the consecutive seven-year-to-life terms in counts 2 and 4 were imposed pursuant to Penal Code section 3046. The court shall forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Hull, Acting P. J., and Robie, J., concurred.