Filed 4/29/13  P. v. Carter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES L. CARTER,<br><br>    Defendant and Appellant. | D060328<br><br><br><br>(Super. Ct. No. SCD208826) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth K. So, Judge.  Affirmed.


A jury convicted James L. Carter of conspiracy to commit murder, two counts of first degree murder, and three counts of attempted murder.  The jury also found true gang and firearm enhancements that were attached to the counts.  Carter appeals, contending the trial court erred when it (1) erroneously admitted evidence of items seized from his home, and (2) failed to stay the sentence for conspiracy to commit murder under Penal Code section 654 (section 654).  We reject Carter's contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Because Carter does not challenge the sufficiency of the evidence to support his convictions, we summarize the pertinent facts to provide background for our discussion of his contentions on appeal.

On December 31, 2002, a car full of suspected Lincoln Park gang members shot Jason and Thomas Brown, both members of a rival Skyline gang. Thomas died from his injuries and Jason was hospitalized for several days. Carter, who was also a member of a Skyline gang, visited Jason in the hospital. During that visit, Jason told Carter that Lincoln Park gang members were responsible for the shooting. In response, Carter inquired about guns and Jason directed him to a duffel bag at Jason's father's house that had an AK and handguns. That same day, Carter and his wife, Jenell Robinson, went to a Big 5 Sporting Goods (Big 5) store where Robinson purchased a box of ammunition for Carter.

The next day, Carol Waites and Sharen Burton, two innocent bystanders, were killed during a drive-by shooting outside Dr. J's liquor store, a known hangout for Lincoln Park gang members and affiliates. Waites's seven-year-old nephew, Ozvie Harris, was also shot and injured. There were several Lincoln Park gang members and affiliates, including Travis Kirk, Kaelin Nelson, and Peter Cruz, at Dr. J's during the shooting. Nelson was shot in his lower left leg, and Cruz was injured on his back and shoulder.

Officers found several bullets, bullet fragments, shell casings, shotgun slugs and shotgun wadding at the scene of the shooting. Based on this evidence, officers

2

determined that the perpetrators used at least five different firearms, including an AK-47, a .45 caliber handgun, a .380 caliber handgun, a 12-guage shotgun, and a nine-millimeter handgun. Officers could not rule out whether revolvers or other firearms were also used because revolvers do not leave shell casings and some shell casings may not have been recovered. Police never recovered any firearms that could be matched to the casings found at the scene.

Approximately four months after the shooting, officers searched Carter's home. They found two revolvers, two boxes of ammunition, and a bulletproof vest. Both firearms were inoperable. The two boxes of ammunition had tags on them indicating that they were purchased from Big 5.

The prosecution's case included testimony from several cooperating informants, including members of Carter's gang and rival gangs. Some informants received financial benefits from the county or leniency in their sentence in unrelated cases. Multiple witnesses testified that they heard Carter admit to being one of the shooters at Dr. J's liquor store. One witness also testified that he saw Carter with a duffel bag full of guns, including an AK, at Brown's house before the shooting and another witness stated that he saw Carter with an AK-47 on the night of the shooting.

## DISCUSSION

### I. *Alleged Evidentiary Error*

Carter argues he was denied due process and a fair trial because the trial court erred by admitting evidence of the guns, ammunition and bulletproof vest found in his home. Specifically, he asserts that because "the prosecution's case was founded entirely

3

on cooperating witness testimony," the erroneous admission of the evidence tipped the balance in favor of the prosecution in a close case.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 491.) Generally, evidence a defendant possessed a weapon not used in the crime charged is inadmissible as such evidence "leads logically only to an inference that defendant is the kind of person who surrounds himself with deadly weapons—a fact of *no relevant* consequence to determination of the guilt or innocence of the defendant." (*People v. Henderson* (1976) 58 Cal.App.3d 349, 360; see also *People v. Riser* (1956) 47 Cal.2d 566, 577 (*Riser*).) Nonetheless, evidence of the defendant's possession of a weapon is admissible when it is probative on issues other than the defendant's propensity to possess weapons. (See, e.g., *People v. Jablonski* (2006) 37 Cal.4th 774, 821–822; *People v. Cox* (2003) 30 Cal.4th 916, 956.)

In this case, the prosecution argued the disputed evidence was admissible to corroborate Robinson's testimony that she purchased ammunition for Carter at Big 5 shortly before the shooting and was relevant to show that Carter was part of a conspiracy to provide ammunition to the gang to commit the murders. Further, the prosecution's gang expert relied in part on evidence that Carter possessed weapons, ammunition and a bulletproof vest to conclude Carter was an active member of a criminal street gang. While we conclude the evidence was only minimally relevant to corroborate Robinson's testimony and prove the conspiracy count and gang allegations, the evidence was not prejudicial.

In regard to prejudice, "we are concerned only with the possibility of an emotional response to the proposed evidence that would evoke the jury's bias against [Carter] as an individual unrelated to his guilt or innocence." (*People v. Gunder* (2007) 151 Cal.App.4th 412, 417 (*Gunder*).) Such an emotional response by jurors to the challenged evidence, or their confusion or being misled by that evidence, was unlikely here because the evidence was no more prejudicial than other evidence in the case. Jurors heard testimony from multiple witnesses that Carter was a gang member and admitted to being involved in the Dr. J's shootings. Additionally, there was other evidence that Carter possessed a weapon on the night of the murders. (See *Riser*, *supra*, 47 Cal.2d at pp. 577–578 [no prejudice in admitting evidence of other firearm and ammunition possessed by defendant when jury would have concluded from other properly admitted firearm evidence that defendant possessed firearms]; *Gunder*, at p. 417 [no undue prejudice in admission of evidence of defendant's prior firearm possession when firearm possession was "inherent in the offenses at issue"].) The jurors also heard evidence that the firearms found in Carter's home were inoperable and were informed that it was not illegal for Carter to own a bulletproof vest. We presume the jury considered this information. Under these circumstances, it is not reasonably likely that the jury would have reached a result more favorable to Carter had the disputed evidence been excluded and any error in the admission of that evidence was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Finally, we reject Carter's arguments that the admission of the firearms, ammunition, and bulletproof vest evidence deprived him of due process. "Ordinarily,

5

even erroneous admission of evidence does not offend due process unless it is so prejudicial as to render the proceeding fundamentally unfair." (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1042; *People v. Partida* (2005) 37 Cal.4th 428, 436 ["the admission of evidence, even if error under state law, violates due process only if it makes the trial fundamentally unfair"].) Having reviewed the entire record of the trial, we do not find this is a case where the disputed evidence was so uniquely inflammatory that it rendered the trial fundamentally unfair. Accordingly, we reject Carter's due process arguments.

## II. *Section 654*

The trial court sentenced Carter to 50 years to life for conspiracy to commit murder (count 1), consecutive terms of life without the possibility of parole, doubled, for the two murder counts (counts 2–3), and three consecutive 30 years to life terms for the attempted murder counts (counts 5–7). The court also imposed consecutive 25 years to life terms as to each count for the firearm enhancements.

Carter argues the trial court erred by failing to stay his sentence for conspiracy to commit murder under section 654 because the conspiracy did not have an objective separate from the other offenses. We disagree.

Section 654 prohibits multiple punishment for an indivisible course of conduct even though it violates more than one statute. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) Whether a course of conduct is indivisible depends on the intent and objective of the actor. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but

6

not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  However, even if the defendant entertained but a single principle objective during an indivisible course of conduct, he may be punished separately for multiple convictions if he committed crimes of violence against different victims.  (*People v. Champion* (1995) 9 Cal.4th 879; *People v. Anderson* (1990) 221 Cal.App.3d 331, 338.)

"It is of course true that . . . section 654 prohibits the imposition of sentences, whether concurrent or consecutive, for both a murder and conspiracy to commit the murder.  [Citations.]  However, 'if "a conspiracy had an objective apart from an offense for which the defendant is punished, he may properly be sentenced for the conspiracy as well as for that offense.  [Citation.]" ' "  (*People v. Moringlane* (1982) 127 Cal.App.3d 811, 819 (*Moringlane*) [finding section 654 does not bar multiple punishment for murder and conspiracy to commit murder where the murder victim was not the subject of the conspiracy].)

Here, the jury found Carter guilty of conspiring to murder rival gang members, whereas the victims of the murder charges were nongang members Waites and Burton.  Accordingly, as in *Moringlane*, Waites's and Burton's deaths were not the object of the conspiracy and section 654 does not bar multiple punishment.  (*Moringlane*, *supra*, 127 Cal.App.3d at p. 819.)  Carter argues, however, that *Moringlane* does not apply because Waites and Burton became the object of the conspiracy by operation of law under the transferred intent doctrine (see CALCRIM No. 562), which was reflected in the jury's findings that the murders were committed for the benefit of a gang.  The jury was instructed that "[i]f the defendant intended to kill one person, but by mistake or accident

7

killed someone else instead, then the crime, if any, is the same as if the intended person had been killed." We are not convinced by Carter's argument because it still remains that he had an objective in the conspiracy that was separate and distinct from the other crimes for which he is being punished, namely murdering Waites and Burton.

## DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.